## APPEAL OF SUTHERLAND MANUFACTURING CO.

Docket No. 4256.     Submitted September 14, 1925.     Decided April 16, 1926.

Upon the evidence, *held*, that the taxpayer was not affiliated with Davidson, Hicks & Greene Co.

*Roscoe Bond, Esq.*, for the taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

Before STERNHAGEN and ARUNDELL.

The petitioner appeals from the determination of a deficiency in income and profits taxes for the years 1919 and 1920 in the amount

of $17,261.91. The deficiency grows out of the refusal of the Commissioner to affiliate the taxpayer with Davidson, Hicks & Greene Co.

FINDINGS OF FACT.

The petitioner was organized on July 13, 1916, under the laws of the State of Tennessee, with its principal office in Nashville. At the time of organization it had a paid-in capital stock of $20,000, represented by shares having a par value of $100 each and held as follows:

|  | Shares. |
|---|---|
| Davidson, Hicks & Greene Co | 110 |
| Clarence Sutherland | 90 |

W. V. Davidson held in his name as trustee 106 shares that were owned by Davidson, Hicks & Greene Co. (hereinafter called the Davidson Co.), and one share each was issued in the names of W. V. Davidson, J. N. Hicks, H. M. Greene, and B. G. Hicks, respectively, in order that they might qualify as directors of the Sutherland Manufacturing Co. During the years 1919 and 1920 the stock of the petitioner was held by the same persons in the same proportions as at the date of organization.

The Davidson Co. was organized in 1908 and succeeded Davidson, Benedict Co. This company was engaged prior to the organization of the petitioner in the wholesale and retail lumber business, with an interior finishing department in which it manufactured such articles as frames, doors, stairways, sash, etc. For many years immediately preceding the organization of the petitioner, Clarence Sutherland had been the manager of the retail department of the Davidson Co. In 1916 the officers of the latter company decided that the business had grown to such proportions that it was impracticable for one man to look after the rough lumber business and also the manufacturing business, and that better results could be obtained if Sutherland were to devote all of his time to the manufacturing department which was engaged in making interior finishings. This course also provided a plan whereby the retention of Sutherland's services could be assured by making a more equitable division of the profits, if the new corporation, in fact, was able to make such profits.

The Sutherland Manufacturing Co. was thereupon organized with W. V. Davidson as president, J. N. Hicks as vice president, H. M. Greene as secretary, and Clarence Sutherland as treasurer and manager, and the same persons, with B. G. Hicks, the son of J. N. Hicks, formed the board of directors. W. V. Davidson, J. N. Hicks, and H. M. Greene were at the same time president, vice president, and secretary, respectively, of the Davidson Co.

At the time of organization of petitioner, Sutherland owned stock of the par value of $8,500 in the Davidson Co. This stock had been purchased through W. V. Davidson and Sutherland had paid him on account thereof $3,000. A portion of the stock so held by Sutherland was disposed of at the time he acquired an interest in the Sutherland Manufacturing Co., leaving his holdings in the Davidson Co. during the years 1919 and 1920 less than 1 per cent of the outstanding stock of that company.

With the incorporation of the petitioner the Davidson Co. ceased to operate the interior finishing department of its business and this work was thereafter handled exclusively by the former. At the time the petitioner commenced business it took over from the Davidson Co. certain accounts and also all of the lumber and other material of the interior finishing department, together with the work in process. It rented the interior finishing plant and machinery and also had the use of the lumber yards of the Davidson Co. As the working capital of petitioner was inadequate to carry on its business during the early period of its life, the Davidson Co. financed it by advancing money for pay rolls and by selling it lumber on credit until such time as petitioner was able to finance itself. The assistance rendered enabled it to do a business in double the amount it could have done on its available capital. It was the practice of the two companies in bidding for work to include not only the material handled by the bidding company, but also to include material that might be furnished by both companies and then turn over to the other company the order for such material as the bidding company could not furnish.

From the date of incorporation to January 16, 1918, petitioner rented its plant from the Davidson Co. for $100 per month and 10 per cent of its profits, which was an amount less than a fair rental therefor. On January 16, 1918, the rental was increased to $300 per month and 10 per cent of the net profits. The value of the plant rented was $30,000. Section 3 of the by-laws of both the petitioner and the Davidson Co. provided as follows:

No stockholder shall transfer his or her stock to outside parties without first offering same to the executive officers of the company, at their office in Nashville, Tennessee.

The directors and officers of the petitioner, other than Sutherland, received no salaries for their services.

OPINION.

ARUNDELL: The Davidson Co. owned 55 per cent of the stock of petitioner and claims that it controlled the 45 per cent owned by Sutherland, thus giving it ownership and control of substantially

all of the stock. But the record fails to present more than indications of potential control of the stock owned by Sutherland. The Sutherland Manufacturing Co. was organized not alone because it was thought that a branch of the Davidson Co.'s business could thereby be run more efficiently, but also to insure the retention of Sutherland's services. He was the manager and active head of the petitioner and, so far as the record discloses, was free to vote his stock as his judgment dictated. The fact that Sutherland and the other stockholders worked harmoniously does not establish control by either of the stock of the other.

In the *Appeal of Isse Koch & Co.*, 1 B. T. A. 624, we held that the control required by the statute was an actual control as distinguished from strictly legal control, but that such control must be actually exercised and mere potential control will not suffice. We find no evidence in the record of the exercise of control by the Davidson Co. of the stock owned by Sutherland and we can not assume that it in fact existed. There was, undoubtedly, a close working agreement between the companies and some transactions between them were on an artificial basis, particularly during the early life of petitioner, but mere economic unity does not meet the statutory test. *Appeal of Rishell Phonograph Co.*, 2 B. T. A. 229. The provision in the by-laws that no stockholder shall transfer his stock without first offering it to the executive officers of the company can not serve to give the Davidson Co. control of Sutherland's stock. He may never desire to sell the stock, but even if he did desire to do so, he was under no obligation to sell to them, though it may be assumed he would do so provided the price offered was equal to what he could secure elsewhere. The evidence of control is not convincing. *Appeal of R. A. Tuttle Co.*, 1 B. T. A. 1218; *Appeal of Block Street Wharf & Warehouse Co.*, 2 B. T. A. 183.

*The deficiences are $3,050.25 for 1919 and $14,211.66 for 1920. Order will be entered accordingly.*

STERNHAGEN, dissenting: The evidence taken in its entirety indicates to my mind an affiliation. The Sutherland Co. while separately incorporated is still but an organized branch of the complete enterprise. Sutherland testified that he understood, as a layman would, that the Davidson Co. and its board of directors controlled both the business and the stock of the Sutherland Co.; that he had no control, no more power in dictating the company's policies than if he had owned only 5 per cent of the stock, and that he was manager in the same sense and exercised the same authority over the incorporated branch as prior to its separate incorporation. It should be remembered that the 55 per cent of the stock which he did not own was

not scattered and ineffectual but was owned entirely by the Davidson Co., so that as a stockholder he was powerless against it.

There was complete unity in the enterprise. The Davidson Co. was not merely the progenitor of the Sutherland Co. but it exercised a parental care and responsibility. As Sutherland expressed it, "We were working for the mutual good of each other." The practice of each bidding for the whole job in behalf of both worked for their mutual advantage. Sutherland alone drew salary. In addition to this, if Sutherland at any time was discharged he was required to offer his stock to the Davidson Co., and, as he said, he had every reason to believe that the old company would take it over. This seems to me to indicate a control by the Davidson Co. of the Sutherland stock either directly or through closely affiliated interests.

The statute seems to me to make it necessary, as I had understood this Board to hold, to examine the facts of each case with a view to a recognition of actual control of the stock during the particular year in question, and I had not supposed that by control of the stock was meant only ownership or its approximation. Here it seems to me that the Davidson Co. had all the control of this stock an owner could have except title and the right to dividends. The other rights were so completely dominated by the Davidson Co. as to make Sutherland's so-called ownership a mere form for increasing his salary. This was what Davidson testified was the purpose of the separate incorporation. While I agree that ownership of a majority of voting stock is not of itself equivalent to the statutory ownership or control of substantially all of the stock, I think that actual conditions may be such as to bring such a situation within the statute. This I think is such a case.

On reference to the Board, GRAUPNER, JAMES, and PHILLIPS concur in the dissent.